IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

ROBERTO VILLAMIL-SORDO,

Plaintiff,

v.

VARADERO @ PALMAS, INC. ET AL.,

Defendants.

CIV. NO.: 18-1425 (SCC)

**OPINION AND ORDER**

Plaintiff Roberto Villamil-Sordo originally filed this action before the Commonwealth of Puerto Rico's Court of First Instance, Superior Court of Humacao on June 18, 2018, against Co-Defendants Varadero @ Palmas, Inc. ("Varadero") and Aspen American Insurance Company ("Aspen"), as well as various placeholder parties. *See* Docket No. 1, Ex. 1. Aspen later removed the action to this Court, invoking our admiralty jurisdiction pursuant to 28 U.S.C. § 1333. *See* Docket No. 1. Plaintiff later amended the Complaint to add co-Defendants Fra Dolcino, LTD, Luca Borri and Unipolsai Assicurazioni, S.P.A (the "Fra Dolcino Defendants"), s*ee* Docket No. 25, and again to add additional claims, *see* Docket No. 80. Plaintiff alleges breach of contract and negligence under maritime law and Puerto Rico law for damages sustained by his boat that was stored in Varadero's boatyard in Humacao, Puerto Rico

during Hurricane María in 2017. *See id.* Plaintiff reached a confidential settlement agreement with Varadero and Aspen, and judgment was entered as to those parties. *See* Docket Nos. 108, 149. The Fra Dolcino Defendants had filed a Motion for Summary Judgment, *see* Docket No. 86, which they later amended after the settlement agreement was reached with Varadero and Aspen, *see* Docket No. 141. Plaintiff opposed, *see* Docket No. 151, to which the Fra Dolcino Defendants replied, *see* Docket Nos. 154, 157. For the reasons stated below, the Fra Dolcino Defendants' Amended Motion for Summary Judgment at Docket No. 141 is DENIED.

## I.      Background

In the Second Amended Complaint, Plaintiff alleges that he is the owner of the vessel called EZ Trade, which he stored at Varadero's boatyard in Humacao, Puerto Rico during the 2017 hurricane season. *See* Docket No. 80, ¶¶ 1, 10-14. Hurricane Irma, which passed through Puerto Rico on September 6, 2017, did not cause any damage to the EZ Trade. *See id.* at ¶¶ 11, 13. Plaintiff alleges that, on September 18, 2017, he passed through the boatyard and noticed that another vessel – the Fra Dolcino Defendants' boat – had been placed next to the EZ Trade with the mast and sails still installed. *See id.* at ¶¶ 19-20. In light of the warnings of the incoming Hurricane María, Plaintiff requested the other vessel's relocation, but Varadero denied the request. *See id.* at ¶ 21. When Hurricane María charged through Puerto Rico

beginning on September 20, 2017, the Fra Dolcino collapsed onto the EZ Trade, causing substantial damage to the latter. *See id.* at ¶¶ 18, 24. Plaintiff then brought this action against Varadero and its insurer, Aspen, and later against the Fra Dolcino Defendants, for breach of contract and negligence under maritime law and Puerto Rico law. *See id.* at ¶¶ 30-40.

The Fra Dolcino Defendants brought a cross-claim against Varadero and Aspen, arguing for full indemnity from those parties for any loss they sustain as a result of this lawsuit. *See* Docket No. 64. However, Plaintiff, Varadero and Aspen entered into a confidential settlement agreement that relieved Varadero and Aspen of all liability, *see* Docket No. 108, thereby mooting the Fra Dolcino Defendants' cross-claims against those parties, *see* Docket Nos. 105, 139. Judgment was then entered as to Varadero and Aspen. *See* Docket No. 149.

The Fra Dolcino Defendants had also moved for summary judgment, *see* Docket No. 86, which was denied without prejudice, largely in view of the settlement agreement, *see* Docket No. 138. The Fra Dolcino Defendants then filed an Amended Motion for Summary Judgment, arguing that Varadero was liable for all damages sustained by Plaintiff and that Hurricane María was an Act of God causing damage which no reasonable precautions could have prevented. *See* Docket No. 141. Plaintiff opposed, arguing that the Fra Dolcino Defendants are liable for their own negligence, not Varadero, and that and they have therefore failed to establish

that summary judgment is appropriate at this time. *See*
Docket No. 151.

## II.     Undisputed Facts

In order to make its factual findings, the Court considered
the Fra Dolcino Defendants' Statement of Material Facts
("DSMF") at Docket No. 141, Ex. 1; Plaintiff's Response to the
Fra Dolcino Defendants' Statement of Material Facts
("PDSMF") at Docket No. 151, Ex. 1; Plaintiff's Additional
Statement of Material Facts ("PASMF") at Docket No. 151, Ex.
2; and the Fra Dolcino Defendants' Reply to Plaintiff's
Additional Statement of Material Facts ("DRPASMF") at
Docket No. 154, Ex. 2, as well as all exhibits referenced
therein.

1.  On July 7, 2017, the Fra Dolcino Defendants entered
    into a Land Storage Agreement ("the Agreement")
    with Varadero to store their schooner, the Fra Dolcino,
    in Varadero's boatyard in Humacao, Puerto Rico.
    DSMF ¶ 5; PRDSMF ¶ 5; Docket No. 86, Ex. 5.

2.  Under the Agreement, Varadero provides the names of
    three independent contractors, including José
    Machado, that must be used by the Fra Dolcino
    Defendants for any services to the Fra Dolcino. Docket
    No. 86, Ex. 5, pg. 3.

3. Defendant Luca Borri is an Italian National who resides in Belgrade, Serbia. PASMF ¶ T; DRPASMF ¶ T.

4. Puerto Rico experiences a hurricane season every year between June 1 and November 30. PASMF ¶ A; DRPASMF ¶ A.

5. The Fra Dolcino Defendants lack any knowledge as to when Mr. Machado, who they allege to have contacted to secure the Fra Dolcino during the 2017 hurricane season, was present at Varadero's boatyard. PASMF ¶ II; DRPASMF ¶ II.

6. The Fra Dolcino Defendants lack any evidence as to payment to Mr. Machado for any work done on the Fra Dolcino. PASMF ¶ JJ; DRPASMF ¶ JJ.

### III.    Standard of Review

A Court's discretion to grant summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. That Rule states, in pertinent part, that summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Zambrana-Marrero v. Suárez-Cruz*, 172 F.3d 122, 125 (1st Cir. 1999) (stating that summary judgment is appropriate when, after evaluating the record in the light most favorable to the non-moving party, the evidence "fails to yield a trial worthy issue as to some material fact"). Thus, the party moving for

summary judgment bears the burden of showing the absence

of a genuine issue of material fact. *See Celotex v. Catrett*, 477

U.S. 317, 323 (1986). Once the movant meets this burden, the

burden then shifts to the opposing party who may not rest

upon mere allegations or denials of the pleadings, but must

affirmatively show, through the filing of supporting affidavits

or otherwise, that there is a genuine issue of material fact for

trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986);

*Celotex*, 477 U.S. at 324.

According to Rule 56, in order for a factual controversy to

prevent summary judgment, the contested facts must be

"material" and the dispute must be "genuine." This means

that, as the Supreme Court has stated, "only disputes over

facts that might affect the outcome of the suit under the

governing law will properly preclude the entry of summary

judgment. Factual disputes that are irrelevant or unnecessary

will not be counted." *Anderson*, 477 U.S. at 248 (1986). Thus, a

fact is material if, based on the substantive law at issue, it

might affect the outcome of the case. *See Mack v. Great Atl. and

Pac. Tea Co., Inc.*, 871 F.2d 179, 181 (1st Cir. 1989).

In making this assessment, the Court "must view the

entire record in the light most hospitable to the party

opposing summary judgment, indulging in all reasonable

inferences in that party's favor." *Griggs-Ryan v. Smith*, 905

F.2d 112, 115 (1st Cir. 1990). The Court may safely ignore,

however, "conclusory allegations, improbable inferences, and

unsupported speculation." *Medina-Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990).

**IV.   Analysis**

In their Amended Motion for Summary Judgment, the Fra Dolcino Defendants argue that summary disposition is appropriate because (1) the form, manner and place in which the Fra Dolcino was stored was the sole responsibility of Co-Defendant Varadero and (2) the Fra Dolcino Defendants are relieved of all liability because Hurricane Maria constituted an Act of God, meaning it was of such magnitude that it precluded the possibility of reasonable preparations and rendered unavoidable the resulting damages. We address each argument in turn.[1]

A.  *Liability of Co-Defendant Varadero*

The Fra Dolcino Defendants argue that Varadero is fully liable for the damages alleged by Plaintiff under three distinct theories: (1) in contract, based on the Land Storage Agreement; (2) in tort, for its own negligence and that of its

---

[1] As a threshold matter, the Court has admiralty jurisdiction over this matter pursuant to 28 U.S.C. § 1333, to which the parties agree. "Admiralty jurisdiction brings with it a body of federal jurisprudence, largely uncodified, known as maritime law." *Fairest-Knight v. Marine World Distribs., Inc.*, 652 F.3d 94, 98 (1st Cir. 2011) (citing *Ballard Shipping Co. v. Beach Shellfish*, 32 F.3d 623, 625 (1st Cir. 1994)). "In the absence of a relevant statute, the judicially-developed norms of the general maritime law, an amalgam of traditional common-law rules, modifications of those rules, and newly created rules, governs actions in admiralty." *Id.* (quoting *La Esperanza de P.R., Inc. v. Pérez y Cía. De P.R.*, 124 F.3d 10, 17 (1st Cir. 1997)). Unless otherwise stated, we analyze Plaintiff's claims and the Fra Dolcino Defendants' arguments regarding those claims under these principles of maritime law.

independent contractor; and (3) for violations of the implied warranty of workmanlike performance that attaches to admiralty contracts.

### 1. Liability in Contract

In an attempt to lay the blame on Co-Defendant Varadero, the Fra Dolcino Defendants point to the Land Storage Agreement between themselves and Varadero for the storage of the Fra Dolcino. According to the Fra Dolcino Defendants, the Land Storage Agreement not only provided them a license to store the Fra Dolcino in Varadero's boatyard, but also included the hauling out and blocking of the schooner by Varadero. As such, they argue, Varadero was liable under that contract for any breach of its obligation to properly block the Fra Dolcino when it was initially hauled out and blocked by Varadero at the beginning of the 2017 hurricane season.

However, a look at the contract itself belies that assertion. The Agreement states only that it "is a license for use of Varadero @ Palmas, Inc. facilities"and does not explicitly state who is responsible for the hauling and blocking of the Fra Dolcino. *See* Docket No. 86, Ex. 5[2]. The scant half page of

---

[2] The exhibits attached to the Fra Dolcino Defendants' now-defunct original Motion for Summary Judgment at Docket No. 86 are incorporated by reference to their Amended Motion for Summary Judgment at Docket No. 141, which is the subject of this Opinion and Order. Similarly, the exhibits attached to Plaintiff's Opposition to the original Motion for Summary Judgment are incorporated by reference to his Opposition to the Amended Motion for Summary Judgment, which is the pleading under consideration by the Court for purposes of ruling on the Fra Dolcino Defendants' Amended Motion for Summary Judgment.

agreement terms states only the responsibilities of the owner of the boat, including that said owner must "locate Travel-Lift strap placement" and "ensure that all bilge pumps are shut off" prior to haul-out, and requires certain documents be provided to Varadero before the same; nowhere in the contract is it made clear who is responsible for hauling or blocking the vessel, especially in the case of a storm or other conditions that would require special care.[3] These terms are fleshed out slightly in Varadero's answer to the Second Amended Complain, where it acknowledges that it was responsible for the ordinary hauling out and blocking of the Fra Dolcino, but nothing more. *See* Docket No. 82, ¶¶ 36, 39. Thus, the Land Storage Agreement itself, nor any other source, did exempt Varadero from the obligation to perform special blocking or any other preparations for the incoming storm, and the Fra Dolcino Defendants cannot rely on that agreement to relieve them of all liability.

2. Liability in Tort

The Fra Dolcino Defendants first cursorily argue that Varadero is liable in tort for its own negligence when it

---

[3] The Fra Dolcino Defendants also point to the insurance agreement between Varadero and co-Defendant Aspen in an attempt to argue that Varadero was responsible for the hauling out and blocking, among other services, of the Fra Dolcino, because such services were covered under that insurance contract. *See* Docket No. 86, Ex. 8. However, the purpose of an insurance contract is to delineate what property, services, etc. an insurance company will provide coverage for, and does not affect the duties under separate contracts of the insured, such as the contract between Varadero and the Fra Dolcino Defendants.

performed the initial blocking of the Fra Dolcino at the beginning of the 2017 hurricane season and prior to Hurricane Irma. However, we fail to see, and the Fra Dolcino Defendants do not indicate, how Varadero was negligent in performing those services, given that the Fra Dolcino held up without issue during that storm. The damage at to Plaintiff's boat at issue here was the result of Hurricane María, for which the independent contractor had been hired to prepare the Fra Dolcino rather than Varadero itself. Moreover, because the Fra Dolcino Defendants spend little time advancing this argument, we will similarly decline to expend much effort in analyzing it.

In addition, in an argument mixing principles of contract and tort, the Fra Dolcino Defendants contend that they are absolved of any liability because they contacted one of the authorized independent contractors listed in the Agreement, Mr. Machado, to provide additional blocking of the Fra Dolcino, and Varadero is therefore responsible for Mr. Machado's alleged negligence. This argument begs the initial question of whether Mr. Machado acted negligently in the first place. At this stage, the record is unclear not only as to whether the precautions taken by Mr. Machado were reasonable considering the circumstances, but what exactly those precautions were. Plaintiffs contend that there is no evidence of how or when the Fra Dolcino Defendants entered into an agreement with Mr. Machado and that, because they

were not in Puerto Rico at the time Mr. Machado allegedly performed the services, they have no knowledge of what work was done on the Fra Dolcino by the independent contractor.

The Fra Dolcino Defendants aver that the Mr. Machado doubled the props securing the Fra Dolcino and fixed new tie rods with the appropriate ground screws. Yet Plaintiff's argue, and their expert report indicates that, even if Mr. Machado had performed the services alleged by the Fra Dolcino Defendants, they should have also removed the sails, masts, spars and rigging of the Fra Dolcino, and that the props along the keel of the boat provided insufficient support. *See* Docket No. 125, Ex. 10. The Fra Dolcino Defendants' own expert, while also admitting that the removal of the masts would have been advisable, avers that such measures would have been impossible in the time frame leading up to the storm. *See* Docket No. 125, Ex. 9. Thus, at this stage, the facts are too contested to make a determination as to the independent contractor's negligence, and such conclusion is better suited for a factfinder at trial.

Even assuming *arguendo* that the independent contractor had acted negligently in the blocking and securing of the Fra Dolcino, it is unclear whether a true principal-independent contractor relationship even existed between Varadero and Mr. Machado. Under the Land Storage Agreement, Varadero provided a list of independent contractors that the Fra

Dolcino Defendants were obligated to use for any services to
the Fra Dolcino, but it was the Fra Dolcino Defendants
themselves that hired and oversaw such work to their vessel,
not Varadero. As such, Varadero had no agency over Mr.
Machado's work, which is the generally the basis for liability
imputed to a principal for the actions of its independent
contractor in jurisdictions that allow for such liability.[4] *See e.g.,*
*Becker v. Poling Transp. Corp.*, 356 F.3d 281, 388-89 (2d Cir.
2004) (applying New York law); *Carr v. Puerto Rico Ports Auth.*,
806 F. Supp. 2d, 494, 499-501 (D.P.R. 2011) (applying Puerto
Rico law). Based on the nature of the agreement, it could be
argued – and the Plaintiffs in fact contend – that the Fra
Dolcino Defendants themselves are the responsible party for
any negligence on the part of the independent contractor,
given that they hired him. However, we reiterate that the facts
in this case are too disputed to make such a determination at
the summary judgment phase under Rule 56.

   3.  Workmanlike Performance

   Finally, the Fra Dolcino Defendants argue that Varadero
breached the implied warranty of workmanlike performance
that attaches to all admiralty contracts under the rule of *Ryan*
*Stevedoring Co. v. Pan-Atlantic S.S. Corp.*, 350 U.S. 124 (1956).
The implied warranty of workmanlike performance
"parallels" a negligence standard, *Fairest-Knight*, 652 F.3d at

---

[4] The Fra Dolcino Defendants do not point to, and we do not find, any
clear rule for principal-independent contractor liability under maritime
law.

99 (1st Cir. 2011) (quoting *La Esperanza* 124 F.3d at 17), under which the party invoking it bears the burden of proving that the allegedly sub-standard work "caused the damage claimed," *SS Amazonia v. N.J. Export Marine Carpenters, Inc.*, 564 F.2d 5, 8 (2d Cir. 1977). "The question of what is required in a workmanlike performance is necessarily a factual question that naturally varies from case to case based on the scope and nature of the service to be undertaken." *Northern Ins. Co. of New York v. Point Judith Marina, LLC*, 579 F.3d 61, 68 (1st Cir. 2009)

Here, the record does not indicate neither an explicit nor implied duty that Varadero provide special blocking for the Fra Dolcino in preparation for the incoming hurricane, and we may not create a contractual duty where one does not exist. *Cf. id.* (finding that, under an agreement to store, commission and decommission a vessel, the defendant marina owner was not obligated to appraise the overall condition of the vessel for defects, because no explicit agreement of the parties provided for such an inspection and the record did not support such an implied duty under the principle of workmanlike performance in a case at admiralty). As we have stated, *supra*, the actions of Varadero before Hurricane Irma are not at issue in this case, which leaves only the actions of the independent contractor, Mr. Machado, of whom Varadero is not responsible. As such, there is no basis from which to infer an implied duty of workmanlike

performance to provide special blocking, much less a breach of that duty.

B. *Act of God Defense*

The Fra Dolcino Defendants also contend that Hurricane Maria was an "Act of God" and therefore no amount of care on their part would have prevented the accident that led to the damage to Plaintiff's boat. "Act of God" is a legal term of art describing "any accident, due directly and exclusively to natural causes without human intervention, which by no amount of foresight pain or care, reasonably to have been expected, could have been prevented." *Cenac Towing Co, Inc. v. Southport L.L.C.* 232 Fed. Appx. 929, 932 (11th Cir. 2007) (quoting *Travelers Ins. Co. v. Randall*, 264 F.2d 1, 2 (5th Cir. 1959)); *see also Warrior & Gulf Navigation Co. v. United States*, 864 F.2d 1550, 1553 (11th Cir. 1989) (explaining that the "Act of God" defense "applies only to events in nature so extraordinary that the history of climatic variations and other conditions in the particular locality affords no reasonable warning of them" (quotations omitted)). Because this defense requires that the accident would have happened regardless of the defendant's action's, it "sensibly requires a showing that all reasonable measures would have been futile." *Fischer v. S/Y NERAIDA*, 508 F.3d 586, 596 (11th Cir. 2007). The burden of proving an Act of God "rests heavily upon the vessel asserting such defense." *Bunge Corp. v. Freeport Marine Repair, Inc.*, 240 F.3d 919, 926 (11th Cir. 2001).

The Fra Dolcino Defendants have not presented evidence sufficient to shoulder such a heavy burden. While it is clearly evident that Hurricane María was a storm of unprecedented strength and destructiveness, the Fra Dolcino Defendants have not established that they took all reasonable precautions in the face of an incoming storm to ensure that the Fra Dolcino would not cause damage to the surrounding boats. As discussed *supra* in the correlative analysis of the reasonability of the independent contractor's actions for the purpose of determining Varadero's liability, Plaintiff alleges that the Fra Dolcino Defendants have not even made clear the terms of their agreement with Mr. Machado, if any such agreement existed. Moreover, the parties have proffered conflicting expert evidence of what reasonable precautions should have been taken in preparation for the incoming hurricane.

In view of this competing evidence, the Fra Dolcino Defendants have not established that the measures that they took – or did not take – to secure the Fra Dolcino were not at least one contributing factor to the damage to the EZ Trade, and therefore summary disposition is not appropriate under Rule 56. Moreover, the question of reasonability of the Fra Dolcino Defendants' actions, which is disputed by the parties, is more appropriately decided by a factfinder at trial.

## V.      Conclusion

Having carefully examined the arguments raised by the parties, the Fra Dolcino Defendants' Amended Motion for Summary Judgment at Docket Number 141 is DENIED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 9th day of September, 2021.

S/ SILVIA CARREÑO-COLL

UNITED STATES DISTRICT COURT JUDGE